# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

                Plaintiff,    :    Case No. 3:00-cr-050

                                  District Judge Walter Herbert Rice
-   vs  -                              Magistrate Judge Michael R. Merz

DONNIE TUNSTALL,

                Defendant.    :

# REPORT AND RECOMMENDATIONS

This § 2255 case is before the Court for decision on the merits. Previously the Magistrate Judge had recommended the Motion to Vacate be dismissed (ECF Nos. 63, 66, 70), but withdrew those Reports on May 9, 2017, and ordered the Government to answer on the merits (ECF No. 77, reported at *United States v. Tunstall*, 2017 U.S. Dist. LEXIS 70635 (S.D. Ohio 2017)).

**Procedural History**

On August 23, 2000, Defendant Tunstall pleaded guilty, pursuant to a plea agreement, to one count of armed bank robbery in violation of 18 U.S.C. § 2113 and one count of discharging a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(Plea Agreement, ECF No. 11; Minute Entry, ECF No. 12). After reviewing a Presentence Investigation Report ("PSR"), District Judge Rice sentenced Tunstall to two terms of 120 months each to be served

1

consecutively (Minutes, ECF No. 27; Judgment, ECF No. 30). Tunstall appealed, but his conviction was upheld. *United States v. Tunstall*, Case No. 01-3515, 49 Fed. Appx. 581, 2001 U.S. App. LEXIS 22458 (6th Cir. Oct 24, 2002)(copy at ECF No. 39). Tunstall filed an initial Motion to Vacate on January 6, 2004 (ECF No. 42) which Judge Rice dismissed on recommendation of Magistrate Judge Ovington (ECF Nos. 47, 48, 49).

With the assistance of the Federal Public Defender, Tunstall filed his instant second-in-time § 2255 Motion on June 3, 2016 (ECF No. 56). He sought and received permission of the Sixth Circuit to proceed on that Motion (ECF Nos. 57, 62). However, as instructed by the circuit court, this Court further stayed merits consideration pending a decision by the Supreme Court in *Beckles v. United States*. When that decision was announced, the Magistrate Judge vacated the stay and recommended dismissal, based on his reading of *Beckles v. United States*, 137 S. Ct. 886, 197 L. Ed. 2d 145 (2017)(ECF No. 63). Tunstall's counsel finally persuaded the Magistrate Judge that *Beckles* applied only to the Sentencing Guidelines as they became advisory after *United States v. Booker*, 543 U.S. 220 (2005). Because Tunstall was sentenced before *Booker*, the Magistrate Judge withdrew his prior Reports and Recommendations and ordered the Government to answer (ECF No. 77). The Government has done so (ECF No. 78), Tunstall has replied (ECF No. 80), and the Motion to Vacate is ripe for decision on the merits.

# Analysis

Mr. Tunstall seeks relief from his classification as a career offender under the pre-*Booker* Sentencing Guidelines on the basis of *Johnson v. United States*, 135 S. Ct. 2551 (June 26,

2015[1]), and *United States v. Pawlak*, 822 F.3d 902 (6th Cir. May 13, 2016). *Johnson* declared the so-called residual clause of the Armed Career Criminal Act ("ACCA") unconstitutionally vague; *Pawlak* applied *Johnson* to the parallel residual clause of the Sentencing Guidelines.

**Tunstall's Predicate Convictions**

18 U.S.C. § 924(e), the Armed Career Criminal Act, reads in pertinent part:

> (1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).
>
> (2) As used in this subsection—
> * * *
> (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another [elements clause]; or
> (ii)
>
> is burglary, arson, or extortion, involves use of explosives [enumerated offenses clause], **or otherwise involves conduct that presents a serious potential risk of physical injury to another** [residual clause];

---

[1] Because the law in this area was unusually unstable after *Johnson*, the Magistrate Judge includes calendar dates of decision in the citations to allow the reader to keep the chronology of decisions in mind.

The Sentencing Guidelines definition of a career offender parallels this definition, but requires only two qualifying predicate offenses. Tunstall asserts that one of the prior convictions used as a predicate – his 1994 conviction for discharging a firearm at or into an occupied structure under Ohio Revised Code § 2923.61 -- "no longer qualifies to enhance Tunstall's sentence as a Career Offender." (§ 2255 Motion, ECF No. 56, PageID 340.) Tunstall asserts that the Sixth Circuit had previously held "that this offense qualified as a crime of violence only under the residual clause of the Guidelines." *Id.* at PageID 341, citing *United States v. Ruvalcaba*, 627 F.3d 218, 222 (6th Cir. 2010).

Tunstall further asserts that his 1997 aggravated burglary conviction is not a qualified predicate offense because

> In 1997, one could violate [Ohio Revised Code § ] 2911.11(A) in one of three ways: the offender "by force, stealth or deception" trespasses into an "occupied structure" to commit a criminal offense, and the any of the following occur: (1) The offender inflicts, or attempts or threatens to inflict physical harm on another; (2) The offender has a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code on or about his person or under his control. The second prong of this statute does not contain an element of the use of force, and the statute is broader than the generic form of burglary because the term "occupied structure" is broader than the generic term. Further, Ohio's aggravated burglary statute has been determined to qualify under the residual clause of the ACCA. See *United States v. Cooper,* 302 F.3d 592, 597 (6th Cir. 2002).

*Id.*

These two convictions are the convictions referenced in the PSR as qualifying Mr. Tunstall for a career offender enhancement (See PSR ¶ 35).

The PSR also reports a 1997 conviction for assault on a corrections officer a felony involving as an element the use of physical force against another person. This conviction is not discussed in the PSR, but the PSR with that finding in it was not objected to (Transcript, ECF No. 32, PageID 266). Judge Rice found Mr. Tunstall had "at least two prior felony offenses for crimes of violence" and mentions the aggravated burglary and discharge of a firearm into a habitation as examples. *Id.* at PageID 273. He then recounted the facts of all three convictions. *Id.* at PageID 273-75.

Mr. Tunstall's § 2255 Motion does not discuss this third violent felony conviction and the Government's Answer does not discuss the two convictions on which the Motion focuses. The conviction for assault on a corrections officer fits within the "elements" clause of the Guidelines and therefore qualifies as a predicate offense. The Court must satisfy itself whether the other two convictions still qualify.

In *Ruvacalba*, *supra*, the Sixth Circuit did indeed conclude that discharge of a firearm into a structure qualified as a violent felony, but only under the residual clause of the Guidelines. Likewise, in *Cooper*, *supra*, the Sixth Circuit found that attempted aggravated burglary under Ohio law was broader than the generic definition of burglary. 302 F.3d at 594-95, *citing Taylor v. United States*, 495 U.S. 575, 599 (1990). However, it also held attempted aggravated burglary under Ohio law qualified as a violent felony under the residual clause, based on the prior binding Sixth Circuit decision in *United States v. Lane*, 909 F.2d 895 (6th Cir. 1990). *Lane* had used the required "categorical" approach to analyzing the prior conviction and the District Court in *Cooper* was reversed because it "strayed from the categorical approach employed by this circuit." *Id.* at 597. The categorical approach is now, of course, required by the United States

Supreme Court. *Descamps v. United States*, 133 S. Ct. 2276 (2013); *Mathis v. United States*, 579 U.S. ___, 136 S. Ct. 2243, 195 L. Ed. 2d 604, 610 (June 23, 2016).

In sum, Tunstall has only one qualifying predicate conviction if *Johnson* is applied to the mandatory pre-*Booker* Sentencing Guidelines residual clause. If *Johnson* applies despite the Government's defenses, then Tunstall should be re-sentenced without the career offender enhancement.

**The Government's Defenses**

**The Motion is a Barred Second-or-Successive Motion**

The Government first asserts Tunstall cannot prevail because his Motion does not meet the requirements of 28 U.S.C. § 2255(h)(2) and 2244(b)(4)(Answer, ECF No. 78, PageID 438). The first of these statutes provides:

> (h) A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain-
>
> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

§ 2244(b) provides in pertinent part:

> (b)

* * *

(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—

(A)

the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

* * *

(3)

  (A)

  Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

  (B)

  A motion in the court of appeals for an order authorizing the district court to consider a second or successive application shall be determined by a three-judge panel of the court of appeals.

  (C)

  The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection.

  (D)

  The court of appeals shall grant or deny the authorization to file a second or successive application not later than 30 days after the filing of the motion.

  (E)

  The grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari.

> (4)
> A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section.

These two statutes were added to the Judicial Code by the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"). 28 U.S.C. 2244(b) applies to both habeas corpus applications collaterally attacking state court criminal judgments and § 2255 motions collaterally attacking federal criminal judgments.

Tunstall filed his second-in-time Motion in this Court, but simultaneously sought the circuit court's approval to proceed (See ECF No. 57). Subsequently the Sixth Circuit transferred jurisdiction back to this Court, concluding that Tunstall had made a "prima facie showing that he may be entitled to relief under *Johnson*." *In re: Donnie Tunstall*, Case No. 16-3582, 2016 U.S. App. LEXIS 23608 (6th Cir. Sep. 7, 2016)(copy at ECF No. 62, PageID 356).

In the course of reaching its decision, the Sixth Circuit observed that the Supreme Court itself had declared the rule adopted in *Johnson* to be substantive and therefore applicable to cases pending on collateral review. *Tunstall*, *supra*, at PageID 356, citing *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016). The Government disputes that this is an applicable declaration of retroactivity coming from the Supreme Court itself (Answer, ECF No. 78, PageID 438, citing *Tyler v. Cain*, 533 U.S. 656, 663 (2001); *In re Mazzio*, 756 F.3d 487, 489 (6th Cir. 2014); and *In re Clemmons*, 259 F.3d 489, 493 (6th Cir. 2001)).

The Magistrate Judge agrees with the Defendant that this Court may not re-perform the gatekeeping function of § 2244(b). The statute assigns that function to the circuit court and here the Sixth Circuit has performed that judicial function. In the habeas corpus context, the appellate

courts have held that, once it is determined that an application is second-or-successive within the meaning of AEDPA, the district court lacks jurisdiction to consider the merits without approval by the circuit court. *Franklin v. Jenkins*, 839 F.3d 465(6th Cir. 2016); *Burton v. Stewart*, 549 U.S. 147 (2007). In this case the Sixth Circuit has performed its gatekeeping function and decided that Tunstall had made out a prima facie case. That is the law of the case at this point.

But there is more in 28 U.S.C. § 2255(h) than assignment of a gatekeeping function to the circuit court. As the circuit court noted in *In re Embry*, 831 F.3d 377 (6th Cir. 2016), its gatekeeping role is limited to determining whether the applicant has made a prima facie showing that the application "satisfies the requirements of this subsection." *Id.* at 378. Once the circuit court has given permission to proceed, "the district court is free to decide for itself whether [defendant's] claim relies on a new rule made retroactive by the Supreme Court." *Id.*

*Johnson* plainly embodies a new rule because to decide it, the Supreme Court had to overrule its own precedent in point, *James v. United States*, 550 U.S. 192 (2007), and *Sykes v. United States*, 564 U.S. 1 (2011). Moreover, that Court has also decided the *Johnson* rule is substantive and therefore applicable on collateral review. *Welch*, *supra*. Finally, the Sixth Circuit has decided that *Johnson* renders the residual clause of the Guidelines unconstitutionally vague. *Pawlak*, *supra*. In *Embry*, the Sixth Circuit anticipated a decision from the Supreme Court in *Beckles* as to whether the vagueness doctrine applies to the advisory Guidelines. 831 F.3d at 378. While the Supreme Court did decide in *Beckles* that the vagueness doctrine does not apply to the post-*Booker* advisory Guidelines, it did so in a way that left open whether that doctrine applies to the pre-*Booker* mandatory Guidelines.

9

The Magistrate Judge has previously concluded in this case that "the residual clause of the mandatory Guidelines under which Tunstall was sentenced is unconstitutionally vague," giving the following reasons:

> First of all, the language involved is "textually identical" to the language declared unconstitutionally vague in *Johnson*.
>
> Second, the Guidelines residual clause language performs the same function as the identical language in the ACCA: guiding judges in determining whether a prior conviction is for a crime of violence [footnote omitted]. The purpose of the classification is the same in both cases, to wit, determining whether a defendant is liable to an enhanced sentence on the basis of certain prior convictions. The opportunity for arbitrary enforcement which is one of the targeted evils of vagueness doctrine[2] is available in either context. While the mandatory Guidelines were not a statute, they were sufficiently statute-like to warrant vagueness analysis – they required federal judges to sentence within a range they prescribed, permitting only departures that they authorized.

(ECF No. 77, PageID 434.) The Government's arguments to the contrary are not persuasive. In part it relies on pre-*Johnson* cases questioning whether the vagueness doctrine can ever apply to statutes which are addressed to judges as opposed to citizens. *Johnson* decides that question, indicating arbitrary judicial enforcement of statutes is one of the evils targeted by the vagueness doctrine. In part it relies on the ability of judges under the mandatory Guidelines to "depart" from the Guideline range, as indeed the Court did in this case. But the power to decide that an exception to a rule applies is far more cabined than the discretion to sentence within a statutory range after considering "advisory" Guidelines.

---

[2] On the constitutional evils targeted by the vagueness doctrine, see *Beckles*, 137 S. Ct. at 892, citing *Johnson*, 192 L. Ed. 2d 569, 578.

Because the residual clause of the Guidelines is textually identical to the language in the ACCA declared unconstitutionally vague in *Johnson* and the Supreme Court has expressly decided the *Johnson* rule is substantive and therefore retroactively applicable in collateral relief proceedings (*Welch*, *supra*), retroactive application of *Johnson* in this case is not barred by *Tyler v. Cain*, 533 U.S. 656 (2001); *In re: Mazzio*, 756 F.3d 487 (6th Cir. 2014); or *In re: Clemmons*, 259 F.3d 489 (6th Cir. 2001), relied on by the United States (Response, ECF No. 78, PageID 438-39).

In *United States v. Pawlak*, 822 F.3d 902 (6th Cir. 2016), the Sixth Circuit applied *Johnson* to the Sentencing Guidelines and found them to be unconstitutionally vague. The Government argues "*Pawlak* was itself abrogated by the Supreme Court decision in *Beckles*." (ECF No. 78, PageID 445.) Not so. *Pawlak* is cited by Justice Thomas to demonstrate the conflict in the circuits which prompted the grant of certiorari in *Beckles* (137 S. Ct. at 892, n. 2) and by Justice Sotomayor to show that most circuits agreed the Sentencing Guidelines were subject to vagueness analysis. *Id.* at 902, n. 3. A colorable argument can be made that *Beckles* is inconsistent with *Pawlak*. Indeed, the undersigned originally accepted that argument. But there is certainly no explicit "abrogation" of *Pawlak* in *Beckles* because, as Justice Sotomayor points out in her opinion, mandatory Guidelines are different in their impact on sentencing judges than advisory Guidelines.

The Government argues *Hill v. Masters*, 836 F.3d 591 (6th Cir. 2016), relied on by Tunstall, is inapposite. The Court disagrees. *Hill* directly involved a second-or-successive habeas petition under 28 U.S.C. § 2241, but it did distinguish prisoners sentenced under the mandatory Guidelines from those sentenced under the post-*Booker* Guidelines and noted

> Serving a sentence imposed under mandatory guidelines (subsequently lowered by retroactive Supreme Court precedent)

11

> shares similarities with serving a sentence imposed above the statutory maximum. Both sentences are beyond what is called for by law, *see Brown*, 719 F.3d at 588 (explaining pre-*Booker* guidelines "had the force and effect of law"), and both raise a fundamental fairness issue.

*Id.* at 599. Thus the case is at least supportive of drawing the same distinction between mandatory and advisory Guidelines drawn here.

**The Motion is Barred under *Teague v. Lane***

The United States also argues Defendant's § 2255 Motion is barred by the doctrine of *Teague v. Lane*, 489 U.S. 288 (1989)(Response, ECF No. 78, PageID 447-55). The Magistrate Judge disagrees. The Supreme Court itself has held *Johnson* enunciates a new substantive rule applicable on collateral review. *Welch*, *supra*. The residual clause language in the Career Offender Guidelines and in the ACCA are textually identical. Because the pre-*Booker* mandatory Sentencing Guidelines are sufficiently statute-like to be subject to vagueness analysis, *Johnson* applies directly: there is no need to wait for further Supreme Court analysis explicitly extending *Johnson* to the pre-*Booker* Guidelines.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the instant § 2255 be GRANTED, that Tunstall's sentence be VACATED, and that he be re-sentenced without the Career Offender enhancement previously applied.

June 16, 2017.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).